## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☒ INFORMATION  ☐ INDICTMENT
☐ SUPERSEDING

### OFFENSE CHARGED

15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Fraud in Connection with Purchase and Sale of Securities

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 20 years of imprisonment (15 U.S.C. § 78ff); $5,000,000 fine (15 U.S.C. § 78ff); 3 years of supervised release (18 U.S.C. § 3583(b)(2)); $100 special assessment (18 U.S.C. § 3013)

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
OAKLAND DIVISION

### DEFENDANT - U.S

▶ Yida Gao

DISTRICT COURT NUMBER

4:24-cr-00611 AMO

**FILED**

Dec 16 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form _____ Patrick Robbins _____
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned) _____ Molly K. Priedeman _____

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
} ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

Bail Amount: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments:

1  PATRICK D. ROBBINS (CABN 152288)
   Attorney for the United States
2  Acting under Authority Conferred by 28 U.S.C. § 515

3

4

5

6

7

**FILED**

Dec 16 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11  UNITED STATES OF AMERICA,            )   CASE NO.   4:24-cr-00611 AMO
                                         )
12          Plaintiff,                   )   VIOLATIONS:
                                         )
13      v.                               )   15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 –
                                         )   Fraud in Connection with Purchase and Sale of
14  YIDA GAO,                            )   Securities;
                                         )   18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),
15          Defendant.                   )   Forfeiture Allegations
                                         )
16                                       )   OAKLAND VENUE
                                         )
17                                       )
                                         )
18  ─────────────────────────────────── )

19                        I N F O R M A T I O N

20  The Attorney for the United States charges:

21                        Introductory Allegations

22      At all times relevant to this Information:

23      1.      Yida GAO was a professional venture capital fund manager with a focus on

24  cryptocurrency and blockchain investments.

25      2.      In 2021, GAO began investing in a blockchain project called BitClout.  BitClout was an

26  open-source blockchain-based social media platform.  This platform allowed users to post content,

27  award money to posts they liked, and buy and sell "creator coins." Creator coins were personalized

28  blockchain tokens whose value depended on the reputations of the creators to which they were tied.

INFORMATION                              1

1  BitClout also had its own native cryptocurrency token, called CLOUT.

2                    The Scheme and Artifice to Defraud

3           As part of the scheme to defraud:

4           3.      Between March and May 2021, GAO bought approximately $970,000 in BitClout tokens.

5  These tokens were not publicly traded at the time he bought them. The price GAO paid was based on a

6  mathematically-derived "bonding curve" that set the price based on supply and demand.  During this

7  time, GAO also bought approximately $720,000 worth of individual creator coins, using the BitClout

8  tokens that GAO had bought personally.

9           4.      In April 2021, GAO created two special purpose vehicles ("SPVs") to raise funds from

10 investors and take advantage of investment opportunities in BitClout.  The two BitClout SPVs

11 constituted securities under the provisions of Title 15, United States Code, Section 78j(b) and Title 17,

12 Code of Federal Regulations, Section 240.10b-5.  Working with a small number of partners, GAO raised

13 approximately $11,981,000 across these two SPVs from investors.  The investment strategy was

14 described to investors in the BitClout SPV Investor Memo as involving two distinct phases.  The first

15 part of the strategy was to purchase BitClout tokens at a 20-40% discount to the market trading

16 price.  The second element of the strategy was to find creator coins associated with particular

17 personalities, invest in these creator coins using the acquired BitClout tokens, and then work directly

18 with these creator personalities to help them increase their presence and profile on the BitClout platform

19 and, in turn, increase the trading value of their creator coins.

20         5.      The SPVs had an agreed upon, one-year lockup, during which time the investors could

21 not redeem their investment.  Under the terms of the investment, as set forth in the SPV fund memo,

22 GAO was entitled to a limited management fee and a portion of the "carried interest," or net profits, in

23 the funds.  Specifically, GAO was authorized to take a management fee of 2% per year and 30% of the

24 net profits.  In subsequent communications to investors, GAO eliminated the management fee.

25         6.      GAO devised and executed a scheme to defraud investors by misrepresenting how he

26 would profit from the BitClout SPV funds and by engaging in undisclosed self-dealing transactions that

27 amounted to the improper misappropriation of funds.  This occurred in connection with GAO's purchase

28 of BitClout tokens on behalf of the SPVs.  In the first of these purchases, GAO knowingly structured the

INFORMATION                                    2

transaction in a manner that benefitted him personally without maximizing the benefit for the SPV funds. Specifically, on May 5, 2021, GAO caused the SPV to purchase $587,250 in BitClout tokens from himself at an approximate 20% discount from the market price for the tokens at the time of the transaction. GAO made $118,000 in gain from selling these BitClout tokens. GAO did not disclose to the investors that he was causing the SPVs to purchase BitClout tokens from his personal account, nor that he was making any personal profit whatsoever on the transaction. GAO could have sold these BitClout tokens to the SPVs at an even steeper discount to the then-current market price, which would have benefitted the SPV funds. GAO's failure to do so was a violation of his fiduciary obligation to the investors.

7.    Further, from May 5 through May 24, 2021, GAO collectively purchased an additional 70,715 BitClout tokens on behalf of the SPV investors at an approximate 20% discount to the market price— without disclosing to the investors that the actual discount GAO had secured from the sellers was higher than 20%, and that GAO had taken a "cut" from the transaction that should have been passed along as value to the investors. By structuring the purchase in two steps, using a personal entity as intermediary, GAO sold the tokens to the SPV at a price higher than GAO had purchased the tokens, leading to an improper personal gain of $1.8 million that should have been passed along to the SPV investors. GAO concealed from the SPV investors that he had engaged in this self-dealing and had misappropriated a share of their investment funds for his own personal account.

8.    The investment plan for the SPV was not very successful. By the second half of 2021, the price of BitClout tokens had dropped substantially and GAO's efforts to generate returns by trading creator coins himself and with a third-party trading partner were not successful. Beginning in November 2021, GAO entered into a loan with the same third-party group on behalf of the SPVs, transferring SPV funds to the third party to invest in non-BitClout cryptocurrency projects. Also, in December 2021, after the market for BitClout tokens had dropped substantially, and the overall BitClout ecosystem was stagnating, GAO made a loan from the SPVs to an entity GAO controlled in order to increase returns for the investors by allowing them to invest in, and ultimately benefit from, other non-BitClout cryptocurrency projects. Although GAO made the investments as planned, GAO did not disclose the loan and resulting investments to the SPV investors until May 2022, when GAO offered them

INFORMATION                                          3

1  liquidation options that allowed the investors to roll their funds into these separate cryptocurrency

2  investments GAO had made.  Ultimately the investors declined the offer and chose to have their

3  investment returned in the form of BitClout tokens, as originally contemplated.

4      9.    GAO used means and instrumentalities of interstate commerce in connection with the

5  above actions in the scheme to defraud, including email and messaging communications, electronic

6  funds transfers, and cryptocurrency transfers.

7  COUNT ONE:    (15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 – Fraud in Connection with

8                Purchase and Sale of Securities)

9      10.    Paragraphs 1 through 9 of this Information are re-alleged and incorporated by reference.

10     11.    Beginning no later than in or about May 2021, and continuing through in or about

11 December 2021, both dates being approximate and inclusive, in the Northern District of California and

12 elsewhere, the defendant,

13                        YIDA GAO,

14 did willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of

15 interstate commerce, use and employ manipulative and deceptive devices and contrivances in

16 connection with the purchase and sale of securities, by (a) employing devices, schemes, and artifices to

17 defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in

18 order to make the statements made, in the light of the circumstances under which they were made, not

19 misleading; and (c) engaging in acts, practices, and courses of business which operated and would

20 operate as a fraud and deceit upon persons, specifically, the use of the above devices, schemes, and

21 artifices to defraud, false statements and omissions of material facts, and acts of fraud and deceit.

22     All in violation of Title 15 United States Code, Sections 78j(b) and 78ff; and 17 Code of Federal

23 Regulations, Section 240.10b-5.

24 FORFEITURE ALLEGATION:    (18 U.S.C. §§ 981(a)(1) and  28 U.S.C. § 2461(c))

25     12.    The allegations contained in this Information are re-alleged and incorporated by reference

26 for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1) and

27 Title 28, United States Code, Section 2461(c).

28     13.    Upon conviction for any of the offenses set forth in Counts One this Information, the

INFORMATION                                4

1  defendant,

2                                         YIDA GAO,

3  shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and

4  Title 28, United States Code, Section 2461(c), all property, real or personal, constituting, or derived

5  from proceeds the defendant obtained directly and indirectly, as the result of those violations, the United

6  States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States

7  Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28,

8  United States Code, Section 2461(c).

9          All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) Title 28, United States Code,

10  Section 2461(c), and Federal Rule of Criminal Procedure 32.2.

11

12
   DATED:    December 16, 2024              PATRICK D. ROBBINS
13                                          Attorney for the United States
                                            Acting Under Authority Conferred by 28 U.S.C. § 515
14

15

16                                          /s/ Molly K. Priedeman
                                            MOLLY K. PRIEDEMAN
17                                          BENJAMIN K. KLEINMAN
                                            Assistant United States Attorneys
18

19

20

21

22

23

24

25

26

27

28

INFORMATION                                5